# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | No. 4:12CR00293-SWW-04 |
| CLYDE JOHNSON, | * | |
| | * | |
| Defendant. | * | |

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended partial disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.  INTRODUCTION

Before the Court are Defendant Clyde Johnson's Motion and Supplemental Motion to Suppress (Doc. Nos. 92, 100). The United States filed Responses (Doc. Nos. 99, 109) and Johnson filed a Reply. (Doc. No. 110.)

The Court held a hearing on December 11, 2013. The Court heard evidence through the testimony of Drug Enforcement Administration (DEA) Task Force Officers Sowell and Turner; DEA Special Agent Davis; Federal Bureau of Investigation (FBI) Special Agent Sellars, and West Memphis Police Department (WMPD) Sergeant Phillips. After the hearing, both sides provided additional briefing to the Court. (Doc. Nos. 103, 109.)

Mr. Johnson raises four points in support of his Motions. He asserts that officers and agents 1) were without legal authority to effectuate the traffic stop that led to his detention and arrest; 2) searched his home without his consent; 3) did not provide *Miranda* warnings before questioning him; and 4) continued questioning him without renewing *Miranda* warnings. The Court has carefully considered these points and the applicable law, and based on the testimony presented at the evidentiary hearing, recommends that Johnson's Motions to Suppress be denied.

## II.  EVIDENCE PRESENTED

DEA agents developed a confidential source who identified Tyrone Gamble as a large scale

drug dealer in West Memphis, Arkansas. Agents and local law enforcement officers used the source to set up a reverse sting operation – an undercover agent would sell Gamble five kilograms of purported cocaine in exchange for cash and firearms. The sting was planned for October 19, 2012, in the parking lot of Southland Racing Park in West Memphis, Arkansas. As part of the operation, agents and officers were pre-briefed about the possibility of conspirators showing up to conduct counter-surveillance.

On the date of the sting, law enforcement "pinged" Gamble's phone which led them to 225 South 19th Street, West Memphis, Arkansas – the residence of Clyde Johnson. Officers observed three vehicles – a gray Avalon, a maroon Aztec, and a white Aspen.

Later that afternoon, the source arrived at the Southland Racing parking lot and agents and local law enforcement established surveillance around the area. The undercover agent drove a semi-truck into the parking lot and parked near the source. Shortly thereafter, Gamble arrived driving the gray Avalon observed earlier at Johnson's residence. Agents and officers then observed three other vehicles – the maroon Pontiac Aztec, white Dodge Aspen and a gray Jeep Cherokee – pull into the parking lot and conduct what they believed was counter-surveillance.

As the undercover agent was dealing with Gamble, FBI Agent Sellars and WMPD Sgt. Phillips were sitting in an unmarked vehicle near Entrance 1 of the Southland Racing parking lot, looking for individuals conducting counter-surveillance. They heard on radio traffic that Gamble had arrived and the deal was underway. Sellars and Phillips then observed the white Aspen drive slowly through the parking lot and park nearby with a clear view of the drug deal. Sgt. Phillips personally knew Clyde Johnson and saw him behind the wheel of the Aspen. To conceal police presence, Phillips ducked inside the vehicle while Sellars kept watching. Johnson remained inside the vehicle for several minutes, but when agents arrested Gamble and a marked Arkansas State Police vehicle

drove by, Johnson began driving away. Agent Sellars and Sgt. Phillips pursued Johnson and pulled him over outside the parking lot on a service road. They called Johnson out of the Aspen and placed him in handcuffs. Agent Sellars asked some questions of Johnson but did not provide him any *Miranda* warnings.

They brought Johnson to the scene of the sting operation where supervising DEA Agent Davis said to Johnson, "We would like to search your house." Johnson replied, "Go ahead and search it, there is nothing there." They all went to the residence at 225 South 19th Street, West Memphis, Arkansas, where agents found a handgun and approximately five pounds of marijuana. According to Davis, at 3:24 p.m., he escorted Mr. Johnson to the dining room in his home and advised him of his *Miranda* warnings – reading from a rights card he routinely carries with his DEA credentials. Johnson acknowledged the warning and provided a statement to agents.

After Davis finished questioning him, Officer Sowell requested that Mr. Johnson be transported to the Arkansas State Police office for further questioning. Sowell later met Johnson in an interrogation room and asked Johnson if he understood the *Miranda* warnings previously given. Mr. Johnson said he understood his rights and that he wanted to cooperate with the investigation. Officer Turner was present and confirmed this.

### III. ANALYSIS

#### A. Traffic Stop and Detention/Arrest

"Whether officers make a formal arrest or a detention ripens into an arrest, '[a] warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause.'" *U.S. v. Guevara*, 731 F.3d 824, 832 (8th Cir. 2013) (quoting *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir.2011))); *see also U.S. Martinez*, 462 F.3d 903, 907, 910 (8th Cir. 2006) (holding in the alternative that even if handcuffing

a suspect did convert the detention into an arrest, the arrest was justified by probable cause). "Probable cause to make a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Ulrich, 715 F.3d at 1059 (quoting *Borgman*, 646 F.3d at 523).

As the Court recited at the conclusion of the hearing, officers and agents had ample probable cause to arrest Mr. Johnson as he exited the parking lot. Mr. Gamble, the target of the sting, Mr. Johnson, and two other individuals were together at Johnson's 225 South 19th Street residence immediately prior to the sting at Southland Racing. Mr. Johnson and the others showed up in separate vehicles at Southland Racing at the same time as Mr. Gamble. Mr. Johnson drove slowly through the parking lot, parked his vehicle in an over-watch position and remained in his vehicle until police swarmed Mr. Gamble. Then Mr. Johnson immediately drove out of the parking lot. Agent Sellars and Sgt. Phillips testified convincingly that, based on their observations, Mr. Johnson was engaged in counter-surveillance. The evidence shows Mr. Johnson engaged in counter-surveillance as a conspirator of Mr. Gamble. Therefore, based on the totality of the circumstances, Mr. Johnson's arrest was lawful and supported by probable cause.[1]

### B.   Consent to Search

"While the Fourth Amendment does not permit warrantless searches, law enforcement may conduct such a search if they obtain a resident's voluntary consent." *United States v. Quintero*, 648 F.3d 660, 667 (8th Cir.2011). "The government bears the burden of proving voluntary consent." *Id*. Courts must look to the totality of the circumstances when determining whether consent is

---

[1] The Court notes that Johnson's answers to Agent Sellars's questions at the side of the road should be suppressed as he was in handcuffs but had not been given *Miranda* warnings. The United States recognizes this violation and has agreed to suppress this information.

voluntary and consider the following factors:

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [his] Miranda rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

*United States v. Quintero*, 648 F.3d 660, 667 (8th Cir.2011) (quotation and citation omitted).

In considering the above factors, the Court concludes Mr. Johnson's consent was voluntary. Not terribly long after his arrest, Agent Davis approached Johnson and said, "We would like to search your house." While this is not the best form of a question, the Court concludes it was question enough to elicit the immediate response of, "Go ahead and search it. There is nothing there."[2] Mr. Johnson was not impaired in any way and, as the prosecution points out, he has had substantial experience with the criminal justice system. There was no hint of intimidation or coercion and the interaction took place in a very public area with many people around.

The Court finds this was not a rock-solid consent. As the defense points out, Mr. Gamble was in handcuffs, no written consent form was obtained and Mr. Johnson was not provided Miranda warnings. While factors to consider, the defense concedes they are not requirements. *U.S. v. Saenz*, 474 F.3d 1132, 1136-37 (8th Cir. 2007). And while there was obviously a large police presence at the scene, there is no persuasive evidence of coercion.

After carefully considering all the factors required and Mr. Johnson's statement to "Go ahead and search it," the Court concludes Mr. Johnson's consent was voluntary and the search was lawful.

---

[2]The quotes were taken verbatim from the hearing and do not necessarily match the prosecution's motion or brief. They nevertheless match closely enough.

### C.     Miranda Warnings

The Court fully credits Agent Davis's testimony that he provided Mr. Johnson his *Miranda* warnings before questioning him at the dining room table.  At the hearing, the Court asked Agent Davis to produce the rights warning card from his credentials, which he promptly did.  There is no evidence to support an accusation that Agent Davis failed to provide Mr. Johnson with the warnings.

Likewise, the Court credits Officer Sowell's testimony that he at least reminded Mr. Johnson of the rights previously given by Agent Davis.  And this reminder was sufficient.  The lapse of time between interrogations was minimal given the case law provided by the prosecution.  *United States v Nguyen*, 608 F.3d 368, 374-75 (8th Cir. 2010).  Thus, the Court finds no basis to suppress Mr. Johnson's statements.

### IV.    CONCLUSION

The Court finds no constitutional violation of Mr. Johnson's rights.  IT IS THEREFORE RECOMMENDED that the Motions to Suppress (Doc. Nos. 92, 100) be denied.

DATED this 16th day of January, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE